SCOTT E. BRADFORD, OSB #062824
United States Attorney
District of Oregon
**SUSANNE LUSE, OSB #142489**
Assistant United States Attorney
Susanne.Luse@usdoj.gov
1000 SW Third Avenue, Suite 600
Portland, OR 97204-2936
Telephone: (503) 727-1019
Attorneys for United States of America

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 3:25-cv- |
| Petitioner, | |
| v. | DECLARATION OF TODD RIGNEL IN SUPPORT OF PETITION TO ENFORCE ADMINSTRATIVE SUBPOENAS |
| MULTNOMAH COUNTY DEPARTMENT OF COMMUNITY JUSTICE; DENISE PEÑA, Director, Multnomah County Department of Community Justice; CLACKAMAS COUNTY SHERIFF ANGELA BRANDENBURG; CLACKAMAS COUNTY SHERIFF'S OFFICE PAROLE & PROBATION DIVISION; MARION COUNTY SHERIFF NICHOLAS HUNTER; MARION COUNTY SHERIFF'S OFFICE COMMUNITY CORRECTIONS DIVISION; NATHAN GAOIRAN, Director, Washington County Community Corrections; WASHINGTON COUNTY COMMUNITY CORRECTIONS PROBATION AND PAROLE; | |
| Respondents. | |

Page 1     Declaration of Todd Rignel

**Exhibit B**

I, Todd Rignel, submit this declaration in support of the United States of America Petition to Enforce Administrative Subpoenas, and hereby declare the following under penalty of perjury pursuant to 28 U.S.C. § 1746.

1. I am employed by the U.S. Department of Homeland Security (DHS), Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI) as an assistant special agent in charge. Since 2003, I have worked in various other positions within HSI and U.S. Customs and Border Protection (CBP) to include CBP officer, special agent, national program manager, supervisory special agent and resident agent in charge. Since August 2025, I have overseen HSI operations in the State of Oregon, as well as in Southwest Washington, as an assistant special agent in charge. In this role, I supervise three investigative groups led by supervisory special agents, a resident agent in charge office and a resident agent office. I am a court-recognized expert in human smuggling and trafficking investigations, and, as a CBP officer and special agent, have conducted records checks to determine alienage and removability on hundreds of individuals. Additionally, as course developer/instructor and national program manager at the HSI academy, I have developed and revised curriculum used to teach over 1,000 special agent trainees how to conduct records checks of DHS and ICE databases.

2. HSI serves as the primary investigative arm of ICE and DHS by conducting significant and complex criminal investigations into individuals and international criminal networks that violate U.S. laws, with a focus on combatting the transnational criminal networks that pose the greatest threats to U.S. national security, public safety and global trade. Additionally, HSI seeks to prevent crimes of exploitation and victimization by strategically targeting organizations and individuals, including criminal aliens, who exploit and victimize children and other vulnerable populations.

3. As a directorate and investigative arm of ICE, HSI closely collaborates with ICE Enforcement and Removal Operations (ERO) in investigating, identifying and locating criminal aliens who are amenable to removal and/or criminal prosecution, as both HSI special agents and ERO deportation officers are "immigration officers" as defined in 8 U.S.C. §1101(a)(18). Once an alien amenable to removal is located and placed into removal proceedings by either ERO officers or HSI agents, ERO manages all aspects of domestic transportation, detention, bond management, and supervised release, including alternatives to detention. Ultimately, ERO removes aliens ordered removed from the U.S. to more than 150 countries around the world.

4. In order to complete their complementary missions, HSI and ERO routinely request information from local, state and federal law enforcement agencies to make removability determinations, to prepare for targeted arrests and to determine the location of criminal aliens.

5. In investigating criminal aliens for potential removal and/or criminal prosecution, HSI and ERO use a variety of law enforcement systems and publicly available databases to obtain the most up-to-date criminal history, addresses and associations of a criminal alien.

6. The following aliens are under investigation in Clackamas County:

   a. **Criminal Alien 1**: According to law enforcement databases, this criminal alien has two serious prior convictions in Oregon. First, he was convicted in 2004 of Assault in the Second Degree, Assault in the Third Degree, and Criminal Mistreatment in the First Degree and sentenced over 60 months in prison. In 2008, he was convicted of Manslaughter in the First Degree and sentenced to over 150 months in prison. He was also sentenced to several years' post-prison supervision. ICE issued a detainer to Oregon Department of Corrections ("ODOC") on or about September 17, 2004 and to the Clackamas County Sheriff's Office on or about July 9, 2008,

that were not honored. Oregon officials released this criminal alien into the community in 2023 without notifying ICE. He is a native and citizen of Mexico and illegally present in the United States. Based upon a review of government databases, he is removable under 8 U.S.C. § 1182(a)(6)(A)(i) because he is an alien and entered the United States without inspection, admission, or parole at a time or place other than as designated by the Attorney General.

b. **Criminal Alien 2:** According to law enforcement databases, this criminal alien was convicted in Oregon of three Counts of Rape in the Third Degree and three Counts of Sodomy in the Third Degree involving a minor child under age 16 in Marion County in 2013. He was sentenced to over 90 months in prison and required to register as a sex offender. This criminal alien was subsequently convicted of nine counts of Sexual Abuse in the Second Degree and sentenced to several years in prison to run concurrent to the sentence in the prior case and sentenced to multiple years' post-prison supervision. ICE issued a detainer to ODOC on or about August 13, 2013, that was not honored. Oregon officials released this criminal alien into the community in 2022 without notifying ICE. He is a lawful permanent resident, but his convictions render him deportable under 8 U.S.C. § 1227(a)(2)(E)(i) for having been convicted of a crime of child abuse, child neglect, or child abandonment.

7. The following aliens are under investigation in Washington County:

a. **Criminal Alien 3**: According to law enforcement databases, this criminal alien was convicted in Oregon of Kidnapping in the First Degree, Burglary in the First Degree, Robbery in the Second Degree, and Assault in the Fourth Degree in 2011.

Page 4          Declaration of Todd Rignel

**Exhibit B**

He was sentenced to over 150 months in prison and post-prison supervision. The court imposed an upward departure based on the aggravating fact that the criminal alien had reason to know of a particular vulnerability of his victim based on the victim's age, disability, or ill health, which increased the harm or threat of harm caused by the criminal conduct. ICE issued a detainer to the Clackamas County Sheriff's Office on or about April 6, 2011 and ODOC on or about February 6, 2012, that were not honored. Oregon officials released this criminal alien into the community in 2025 without notifying ICE. This criminal alien is currently being supervised by Washington County. He is a native and citizen of Honduras and a lawful permanent resident of the United States, but his convictions render him subject to deportation under 8 U.S.C. § 1227(a)(2)(A)(iii) for having been convicted of an aggravated felony.

8. The following individuals are under investigation in Multnomah County:

   a. **Criminal Alien 4**: According to law enforcement databases, this criminal alien was convicted of Assault in the Second Degree, Criminal Mischief in the Second Degree, Attempt to Commit a Class B Felony and Unlawful Use of a Weapon in 2018. He was sentenced to over 60 months in prison and several years' post-prison supervision. ICE issued a detainer to ODOC on or about May 24, 2018, that was not honored. Oregon officials released this criminal alien into the community in 2023 without notifying ICE. He is a native and citizen of Mexico and illegally present in the United States. Based upon a review of government databases, he is removable under 8 U.S.C. § 1182(a)(6)(A)(i) because he is an alien and entered the

United States without inspection, admission, or parole at a time or place other than as designated by the Attorney General.

b. **Criminal Alien 5**: According to law enforcement databases, this criminal alien was convicted in Oregon of two Counts of Sexual Abuse in the First Degree in 2010 involving two separate victims who were under the age of 14. He was sentenced to over 60 months in prison and required to register as a sex offender and several years' post-prison supervision. ICE issued a detainer to ODOC on or about February 6, 2012, that was not honored. Oregon officials released this criminal alien into the community in 2022 without notifying ICE. He is a native and citizen of Mexico and a lawful permanent resident of the United States, but his convictions render him subject to deportation under 8 U.S.C. § 1227(a)(2)(A)(iii) for having been convicted of an aggravated felony.

c. **Criminal Alien 6**: According to law enforcement databases, this criminal alien was convicted in Oregon of Rape in the First Degree in 2015. In his plea petition, he admitted an aggravating fact alleged in the indictment – that during this offense, he used or threatened to use a weapon. He was sentenced to over 90 months in prison and post-prison supervision. ICE issued a detainer to ODOC on or about September 3, 2015, that was not honored. Oregon officials released this criminal alien into the community in 2023 without notifying ICE. He has since violated his parole. He is a native and citizen of Mexico and illegally present in the United States. Based upon a review of government databases, he is removable under 8 U.S.C. § 1182(a)(6)(A)(i) because he is an alien and entered the United States without

        inspection, admission, or parole at a time or place other than as designated by the Attorney General.

    d. **Criminal Alien 7**: According to law enforcement databases, this criminal alien was convicted in Oregon of Rape in the First Degree in 2015. He was sentenced to over 120 months in prison with a lengthy term of post-prison supervision and is required to register as a sex offender. ICE issued a detainer to ODOC on or about September 11, 2015, that was not honored. Oregon officials released this criminal alien into the community in 2023 without notifying ICE. He is a native and citizen of Mexico who was previously ordered removed in 2003. He is illegally present in the United States. Based upon a review of government databases, he is removable under 8 U.S.C. § 1182(a)(6)(A)(i) because he is an alien and entered the United States without inspection, admission, or parole at a time or place other than as designated by the Attorney General.

9. The following aliens are under investigation in Marion County:

    a. **Criminal Alien 8**: According to law enforcement databases, this criminal alien was convicted in Oregon of three counts of Rape in the First Degree involving a child under the age of 12 and two counts of Sexual Abuse in the First Degree involving a child under the age of 14. In Defendant's plea petition, he acknowledged that this conviction would result in deportation if he was not a United States citizen. He was sentenced to over 150 months in prison and post-prison supervision with the requirement to register as a sex offender. ICE issued a detainer to Marion County on or about November 19, 2008, which was not honored. Oregon officials released this criminal alien into the community in 2022 without notifying ICE. He is a native

and citizen of Mexico and illegally present in the United States. Based upon a review of government databases, he is removable under 8 U.S.C. § 1182(a)(6)(A)(i) because he is an alien and entered the United States without inspection, admission, or parole at a time or place other than as designated by the Attorney General.

b. **Criminal Alien 9:** According to law enforcement databases, this criminal alien was convicted in Oregon of Rape in the First Degree and Sexual Abuse in the First Degree in 2008 and sentenced to over 90 months in prison and post-prison supervision with the requirement to register as a sex offender. He was subsequently convicted of Sexual Abuse in the First Degree in 2016 and sentenced to over 70 months in prison and post-prison supervision with the continued requirement to register as a sex offender. ICE issued a detainer to Marion County on or about April 2, 2008 and to ODOC on or about September 27, 2016, that were not honored. Oregon officials released this criminal alien into the community in 2022 without notifying ICE. He is a native and citizen of Mexico and illegally present in the United States. Based upon a review of government databases, he is removable under 8 U.S.C. § 1182(a)(6)(A)(i) because he is an alien and entered the United States without inspection, admission, or parole at a time or place other than as designated by the Attorney General.

c. **Criminal Alien 10:** According to law enforcement databases, this criminal alien was convicted in federal court of possessing and using a fake Border Crossing Card to enter the United States in October 2012. In early January 2013, upon release from federal prison, he was transferred to Oregon for an outstanding warrant, where he was subsequently convicted of Robbery and Kidnapping in the First Degree. He

was sentenced to over 100 months in prison and several years' post-prison supervision. ICE issued a detainer to ODOC on or about January 17, 2013 and January 17, 2017, that were not honored. Oregon officials released this criminal alien into the community in 2023 without notifying ICE. He is illegally present in the United States. He is a native and citizen of Mexico and illegally present in the United States. Based upon a review of government databases, he is removable under 8 U.S.C. § 1182(a)(6)(C)(i) because on or about September 17, 2012, he sought admission to the United States by fraud or willfully misrepresenting a material fact.

10. Based on the information presently available concerning these criminal aliens, HSI has determined that each of them are likely subject to removal because they are present in the United States without being admitted or paroled, 8 U.S.C. § 1182(a)(6)(A)(i), arrived in the United States at any time or place other than as designated by the Attorney General, *id.*, by fraud or willfully misrepresenting a material fact, sought to procure admission into the United States, 8 U.S.C. § 1182(a)(6)(C)(i), were convicted of an aggravated felony at any time after admission, 8 U.S.C. § 1227(a)(2)(A)(iii), were convicted of a crime of child abuse, child neglect, or child abandonment, 8 U.S.C. § 1227(a)(2)(E)(i), or were convicted of, admitted having committed, or admitted having committed acts which constitute the essential elements of a crime involving moral turpitude (other than a purely political offense) or attempted or conspired to commit such a crime, 8 U.S.C. § 1182(a)(2)(A)(i).

11. Based on the information presently available concerning these criminal aliens, HSI has determined that each of them may be subject to detention by ICE pending their removal. *See* 8 U.S.C. § 1225(b)(2)(A) ("in the case of an alien who is an applicant for admission, if the

examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title"); 8 U.S.C. § 1225(a)(1) (defining an "applicant for admission" as "[a]n alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters)"); *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025) (holding that the INA "explicitly requires" that applicants for admission be "mandatorily detained for the duration of their immigration proceedings"); 8 U.S.C. § 1226(c) (providing that the Attorney General "shall take into custody" aliens who have committed certain offenses, including aggravated felonies and crimes involving moral turpitude); 8 U.S.C. § 1241(a)(2)(A) (providing that the Attorney General "shall detain" aliens ordered removed).

12.     Between about May 30, 2025 and June 5, 2025, an HSI analyst checked approximately 11 different law enforcement databases and public databases to research the whereabout of the above-listed aliens under investigation. The checks were done by querying their names, aliases, possible addresses, phone numbers, alien numbers, and FBI numbers if found. Results were then compiled and put into a target profile for each subject. Further criminal history checks were conducted again on or about September 8, 2025, to look for any possible recent arrests of the targets.

13.     Between March and July of 2025, HSI agents and ERO officers were assigned to attempt to locate the above-listed aliens under investigation. During their attempts to locate these aliens, HSI agents and ERO officers conducted surveillance at any last known and/or potential

addresses found for each of the aliens under investigation. Neither HSI agents, nor ERO officers, were able to locate these aliens using these last known and/or potential addresses.

14. Under the authority of 8 U.S.C. § 1225(d) and 8 C.F.R. 287.4(c), HSI issued Immigration Enforcement Subpoenas (DHS Forms I-138), to each Respondent County on July 30, 2025. *See* Legend identifying criminal aliens and Subpoenas attached as Exhibit 1. The subpoenas were served upon Respondent Clackamas County and Washington Counties on July 31, 2025, Marion County on August 1, 2025, and Multnomah County on August 4, 2025. See Certificates of Service attached as Exhibit 2

15. The subpoenas required that the counties provide the requested documents within two weeks of the service of the subpoena.

16. Each subpoena HSI issued required the counties to provide to HSI two categories of documents for each alien.

17. First, each subpoena requested documents sufficient to show the following relating to the respective alien: home address(es) during the period of supervision, phone number(s) during the period of supervision, driver's license number and state, name of employer(s) during the period of supervision, employment address(es) during the period of supervision, country of birth, place of birth, date of birth, emergency contact number, and bail or bond records to include the obligor name and address.

18. Second, each subpoena requested documents sufficient to show the underlying criminal charge relating to the respective alien, including but not limited to unredacted police reports, booking sheets, booking photos, probable cause statements, jail disciplinary records, or release agreements or release documents. HSI has been unable to obtain this information from any other source but Respondents.

**Page 11          Declaration of Todd Rignel**

**Exhibit B**

19.     The first category of documents will assist HSI and ERO in identifying and locating the aliens and in assessing how best to safely take them into custody if necessary. The basic identification information sought in the subpoena (such as name, date of birth, nationality, and FBI number) will allow HSI and ERO to verify that the criminal aliens formerly held in Respondents' custody are in fact the same individuals that HIS is investigating. This corroboration can only be obtained by reviewing Respondents' documents.

20.     As noted above, HSI and ERO attempted to locate the aliens under investigation at the addresses found within databases without success, so any further addresses or contact information the counties have will assist HSI and ERO in locating the aliens without wasting further resources. Because the aliens are subject to post-prison supervision by the respective counties, the counties are likely to have more up-to-date contact and biographical information for the aliens. HSI cannot obtain this information from any other source. In addition, obtaining multiple addresses (such as both a home address and work address) also aids law enforcement in ensuring that the apprehending officers have at least one correct address and also allow them to choose the best approach to apprehend a criminal alien that minimizes risk of harm to themselves, the criminal alien, and the public.

21.     This second category of documents will assist HSI and ERO not only in locating the aliens, but in preparing for officer and public safety when encountering the aliens after locating them. While HSI has access through databases to some basic information concerning the criminal charge, these sources do not typically contain any factual information regarding the underlying conduct that led to the arrest and charge.

22.     It is likely that the counties possess helpful documents that contain such information, such as probable cause statements, arrest reports, and/or additional documents that

may contain factual information that provides significantly more detail concerning the criminal conduct alleged against the alien.

23. The documents that show the criminal charge may include information that sheds light on where the alien may be found. These documents may include information about any bond obligor, who may have knowledge of an alien's most recent whereabouts. The documents also may reflect police notations about where the alien may be found.

24. The documents containing a state criminal charge also have independent evidentiary value in proving an alien's criminal history in either administrative or federal court proceedings.

25. Documents containing information relating to the criminal charge will assist HSI and ERO in various ways: in assessing if the alien is removable, in evaluating whether the alien may and should be referred for criminal prosecution and assessing each alien's potential level of dangerousness to the public and to arresting officers. The information shown in these documents also can aid HSI and ERO to assess the appropriateness of detention of a criminal alien post-apprehension.

26. Clackamas County, Washington County, and Multnomah County, through their respective attorneys, responded to the subpoenas via letter or email declining to comply with the subpoenas and citing Oregon's sanctuary laws. *See* correspondence from Respondents attached as Exhibit 3.

27. Marion County, however, has not responded directly to the subpoena. Instead, on or about August 18, 2025, Marion County filed a lawsuit in federal court seeking a declaratory judgment regarding its duties to comply with the subpoenas while also complying with Oregon's sanctuary law.

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct.

Executed this _30th_ day of September 2025.

TODD R RIGNEL
Digitally signed by TODD R RIGNEL
Date: 2025.09.30 11:19:38 -07'00'

Todd Rignel
U.S. Department of Homeland Security
Assistant Special Agent in Charge