STEVE ELZINGA, OSB #123102
Marion County Legal Counsel
*selzinga@co.marion.or.us*
555 Court Street N.E., Suite 5242
P.O. Box 14500
Salem, OR 97309
Telephone: (503) 588-5220
Attorney for Marion County Defendants

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>                     Peitioner,<br><br>  v.<br><br>**MULTNOMAH COUNTY DEPARTMENT OF COMMUNITY JUSTICE**; **DENISE PEÑA**, Director, Multnomah County Department of Community Justice; **CLACKAMAS COUNTY SHERIFF ANGELA BRANDENBURG**; **CLACKAMAS COUNTY SHERIFF'S OFFICE PAROLE & PROBATION DIVISION**; **SHERIFF NICHOLAS HUNTER**, Marion County Sheriff's Office Community Corrections Division; **MARION COUNTY SHERIFF'S OFFICE, COMMUNITY CORRECTIONS DIVISION**; **NATHAN GAOIRAN**, Director, Washington County Community Corrections Probation and Parole; **WASHINGTON COUNTY COMMUNITY CORRECTIONS PROBATION AND PAROLE**,<br><br>                     Respondents. | Case No. 3:25-cv-01784-JR<br><br>**SUPPLEMENTAL DECLARATION OF STEVE ELZINGA IN SUPPORT OF MARION COUNTY DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT** |

Page **1** of **2** – SUPPLEMENTAL DECLARATION OF STEVE ELZINGA IN SUPPORT OF MARION COUNTY DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Marion County Legal Counsel
555 Court Street NE · P.O. Box 14500 · Salem, OR 97309
Telephone: 503-588-5220

I, Steve Elzinga, submit this declaration in support of Marion County Defendants' Motion for Partial Summary Judgment, and hereby declare the following under penalty of perjury:

1. I am currently employed as County Counsel for Marion County, Oregon and represent Marion County defendants in this matter.

2. I am over 18 years old and am competent to testify as follows.

3. On October 6, 2025, 20 of Oregon's 36 counties sent a letter to the Oregon Attorney General and the United States Attorney General. The letter said that it "is currently unclear how Oregon's Sanctuary Promise Act, Oregon's Public Records Act, and federal laws interact and apply due to apparent conflicts, including in situations where a local government is served with an administrative subpoena pursuant to 8 USC §1225." The letter sought "clarity that will help all local governments ensure they are properly following federal, state, and local laws." A copy is attached as Exhibit 1.

4. A copy of Oregon Laws 2021, Chapter 550, (i.e. Oregon's Sanctuary Promise Act, HB 3265 (2021)) is attached Exhibit 2, which is from https://www.oregonlegislature.gov/bills_laws/lawsstatutes/2021orlaw0550.pdf.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct per 28 U.S.C. § 1746.

Executed: November 3, 2025

By: /s/ Steve Elzinga
Steve Elzinga, OSB #123102
Marion County Counsel

Page **2** of **2** – SUPPLEMENTAL DECLARATION OF STEVE ELZINGA IN SUPPORT OF MARION COUNTY DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Marion County Legal Counsel
555 Court Street NE · P.O. Box 14500 · Salem, OR 97309
Telephone: 503-588-5220

October 6, 2025

Attorney General Dan Rayfield
Oregon Department of Justice
1162 Court St. NE
Salem, OR 97301-4096

The Honorable Pam Bondi
Attorney General, U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530

Dear Oregon Attorney General Dan Rayfield and United States Attorney General Pam Bondi,

    Legal uncertainty harms everyone and benefits no one. It is currently unclear how Oregon's Sanctuary Promise Act, Oregon's Public Records Act, and federal laws interact and apply due to apparent conflicts, including in situations where a local government is served with an administrative subpoena pursuant to 8 USC §1225.

    The undersigned Oregon counties encourage the parties in *Marion County v. Kotek et al* (Case 6:25-cv-01464-MC) to ask the federal court to issue a detailed opinion that provides the type of clarity that will help all local governments ensure they are properly following federal, state, and local laws.

Regards,

| | | |
|---|---|---|
| Baker County | Jefferson County | Tillamook County |
| Clackamas County | Klamath County | Umatilla County |
| Clatsop County | Linn County | Union County |
| Columbia County | Malheur County | Wasco County |
| Coos County | Marion County | Wheeler County |
| Crook County | Polk County | Yamhill County |
| Deschutes County | Sherman County | |

EXHIBIT 1
Page 1 of 1

### CHAPTER 550

AN ACT    HB 3265

Relating to immigration; creating new provisions; amending ORS 180.805 and 181A.820; and declaring an emergency.

**Be It Enacted by the People of the State of Oregon:**

SECTION 1. As used in sections 1 to 6 of this 2021 Act:

(1) "Court facility" means a building or space occupied or used by a court of this state or local jurisdiction of this state, and any adjacent property including, but not limited to, sidewalks, parking area, grass or landscaped area, plazas, court-related offices, commercial and governmental spaces within the building or space and entrances to and exits from the building or space.

(2) "Federal immigration authority" means the United States Department of Homeland Security, the United States Immigration and Customs Enforcement, the United States Citizenship and Immigration Services, the United States Customs and Border Protection or a successor agency, any other federal immigration agency or official, or any other entity to which a federal immigration agency delegates or assigns the authority to detect, investigate or enforce violations of immigration law.

(3) "Immigration enforcement" means any activity that has as a purpose the apprehension or identification of an individual in order to:

(a) Subject the individual to civil immigration arrest, civil immigration detention, removal or deportation proceedings or removal or deportation from the United States; or

(b) Criminally prosecute the individual for offenses related to federal laws regarding immigration status.

(4) "Law enforcement agency" means:

(a) County sheriffs, municipal police departments, police departments established by a university under ORS 352.121 or 353.125;

(b) The Oregon State Police; and

(c) Corrections officers.

(5) "Officer" means an individual employed or contracted as an officer of a law enforcement agency whether or not the individual is on duty.

(6) "Public body" has the meaning given that term in ORS 174.109.

SECTION 2. (1) A law enforcement agency or public body may not:

(a) Except as required by state or federal law, deny services, benefits, privileges or opportunities to an individual in custody, or on parole, probation or post-prison supervision, on the basis of known or suspected immigration status, the existence of an immigration detainer, hold, notification or other related federal immigration request or a civil immigration warrant;

(b) Inquire into or collect information about an individual's immigration or citizenship status or country of birth unless:

(A) The information is required to advance an investigation into a violation of state or local criminal law;

(B) The information is submitted to a court of this state, whether orally or in writing, in connection with a proceeding in that court; or

(C) As necessary to determine the individual's eligibility for a benefit that the individual is seeking; or

(c) Provide information about an individual in the custody of the public body or law enforcement agency to a federal immigration authority for the purpose of civil immigration enforcement, except:

(A) As may be required by a judicial subpoena issued as part of a court proceeding or by another compulsory court-issued legal process; or

(B) To the extent that the information is available to the general public and under the same terms and conditions as the information is available to the general public.

(2) For purposes of subsection (1)(c)(A) of this section, a judicial subpoena does not include an administrative subpoena created and signed by a federal immigration authority.

(3) To ensure compliance with all treaty obligations, including consular notification, and state and federal laws, on the commitment or detainment of an individual, a law enforcement agency shall explain to the individual in writing, with interpretation into another language if requested:

(a) The individual's right to refuse to disclose the individual's nationality, citizenship or immigration status; and

(b) That disclosure of the individual's nationality, citizenship or immigration status may result in civil or criminal immigration enforcement, including removal from the United States.

(4) Any person may bring a civil action against a law enforcement agency or public body that violates subsections (1) to (3) of this section to enjoin the violation.

SECTION 3. (1) Public facilities, property, moneys, equipment, technology or personnel may not be used for the purpose of investigating, detecting, apprehending, arresting, detaining or holding individuals for immigration enforcement.

(2) Actions with a purpose described in subsection (1) of this section include, but are not limited to, the following:

(a) Granting a federal immigration agency access to an area of a facility that is not normally open to the public.

1

EXHIBIT 2
Page 1 of 4

(b) Supporting or assisting a federal agency in immigration enforcement, including but not limited to any of the following:

(A) Providing information, including but not limited to an individual's contact information, country of birth, custody status, release date, parole, probation or post-prison supervision appointment dates or times, or home or work address, except as provided in section 2 of this 2021 Act;

(B) Investigating or interrogating individuals for immigration enforcement; or

(C) Establishing traffic perimeters for the purpose of supporting or facilitating immigration enforcement.

(3)(a) If a public body receives a communication or request from a federal agency that relates to immigration enforcement, other than a judicial subpoena described in section 2 (1)(c)(A) of this 2021 Act, the public body shall decline the request and document the communication or request. The documentation described in this subsection must be provided to the director or other similar management personnel of the public body.

(b) The public body shall submit the information documented under this subsection to the Oregon Criminal Justice Commission pursuant to procedures established by the commission. The commission shall require at least monthly submission of the information described in this subsection.

(c) A public body shall adopt internal procedures to carry out this subsection.

(4)(a) The commission shall publish and continually update, on a website operated by or on behalf of the commission, an entry for each communication or request described in subsection (3) of this section, the public body that received the communication or request, the federal agency involved in the communication or that made the request and a summary of the public body's response to the communication or request.

(b) The information contained on the website described in this subsection may not contain any personally identifiable information of the individuals involved in the communication or request, including of an individual targeted by federal immigration authorities, an individual who reported the communication or request, an individual who witnessed the communication or request or report of the communication or request or the family members of an individual described in this paragraph.

(c)(A) Information obtained by the commission under this subsection may be used only for statistical purposes and coordination with the sanctuary violation reporting mechanism established under section 4 of this 2021 Act.

(B) Information described in this subsection that may reveal the identity of an individual described in paragraph (b) of this subsection is exempt from disclosure under ORS 192.311 to 192.478.

(C) Pursuant to a request from the Department of Justice, the commission may release to the department information described in this subsection that is necessary to investigate a report made to the sanctuary violation reporting mechanism established under section 4 of this 2021 Act if the information is used to support an individual described in paragraph (b) of this subsection.

(d) Not later than July 1, 2022, and at least annually thereafter, the commission shall issue a report that summarizes the information reported to the commission and published on the website described in this subsection. The commission shall provide the report to the Governor, the Legislative Assembly, the district attorneys of this state, the Department of State Police, each law enforcement agency in this state and the Department of Public Safety Standards and Training.

(5) Any person may bring a civil action against a law enforcement agency or public body that violates subsection (1) of this section to enjoin the violation.

**SECTION 4.** (1) The Department of Justice shall establish a sanctuary violation reporting mechanism to receive reports of alleged violations of sections 2 and 3 of this 2021 Act and ORS 180.805 and 181A.820. The sanctuary violation reporting mechanism must include a staffed telephone hotline and an online system that allows for electronic reporting.

(2) The sanctuary violation reporting mechanism must:

(a) Be coordinated with the Oregon Criminal Justice Commission to develop a standardized intake process for reports made through the hotline or online system;

(b) Collect all data possible regarding agencies, personnel, locations and individuals involved with violations reported through the hotline or online system;

(c) Provide culturally competent assistance, referrals and resources to an individual targeted by a violation reported through the hotline or online system, and ensure that the assistance, referrals and resources are designed to reduce the effects of trauma and prevent further trauma; and

(d) Coordinate with local organizations and service providers to assist individuals targeted by violations reported through the hotline or online system and families of those individuals.

(3) The department, in coordination with the commission, shall publish and continually update, on a website operated by or on behalf of the department:

(a) The number of complaints received by the mechanism established under subsection (1) of this section; and

(b) An entry for each complaint, including the alleged violation, the federal agency implicated in the complaint and public bodies or agencies involved in the incident and the response of the public bodies and agencies.

(4) The information contained on the website described in subsection (3) of this section may not contain any personally identifiable information of the individuals involved in the incident on which the complaint is based.

(5) Information and data obtained under this section:

(a) May be used only for the purposes described in this section; and

(b) Is exempt from public disclosure under ORS 192.311 to 192.478 if the information may reveal the identity of an individual involved in an incident on which a complaint reported to the sanctuary violation reporting mechanism is based.

**SECTION 5.** (1) An individual may not be subject to civil arrest without a judicial warrant or judicial order when the individual is in a court facility.

(2) An individual who, in good faith, is attending a court proceeding in which the individual is a party or potential witness, or family or household member of a party or potential witness, may not be subject to civil arrest while going to, remaining at or returning from the court proceeding, unless the civil arrest is supported by a judicial warrant or judicial order that authorizes the civil arrest.

(3) Any person may bring a civil action against a law enforcement agency or public body that violates this section to enjoin the violation.

**SECTION 6.** (1) A public body, law enforcement agency or an officer of a law enforcement agency may not enter into or renew an agreement, contract, memorandum of understanding or other arrangement that authorizes the public body, law enforcement agency or officer to exercise federal immigration enforcement powers, including those powers specified in 8 U.S.C. 1357(g), or that otherwise permits the public body, law enforcement agency or officer to detain or house individuals for federal civil immigration violations.

(2) A public body or law enforcement agency may not enter into or renew an agreement, contract, memorandum of understanding or other arrangement under which the public body or law enforcement agency detains or houses individuals who are in the custody of a federal immigration authority for violations of federal immigration law.

(3) A person may not operate a private immigration detention facility within this state.

(4) Any person may bring a civil action against a law enforcement agency or public body that violates this section to enjoin the violation.

**SECTION 7.** Section 6 of this 2021 Act applies to agreements, contracts, memoranda of understanding or other arrangements entered into or renewed on or after the effective date of this 2021 Act.

**SECTION 8.** ORS 180.805 is amended to read:

180.805. **(1) As used in this section:**

**(a)** "Federal immigration authority" means the United States Department of Homeland Security, the United States Immigration and Customs Enforcement, the United States Citizenship and Immigration Services, the United States Customs and Border Protection or a successor agency, any other federal immigration agency or official, or any other entity to which a federal immigration agency delegates or assigns the authority to detect, investigate or enforce violations of immigration law.

**(b)** "Information concerning a person's citizenship or immigration status" means information about whether a person is a citizen of the United States or has lawful authority to be present in the United States, either through a visa, a green card or another official documentation. The term does not include information consisting of a person's address, location, contact information, relatives, associates or other information that could lead to the detection or apprehension of the person.

**(c)** "Public body" has the meaning given that term in ORS 174.109.

**(d)** "Social media" has the meaning given that term in ORS 659A.330.

[(1)] **(2)** Except as required by state or federal law, a public body may not disclose, for the purpose of enforcement of federal immigration laws, the following information concerning any person, whether current or otherwise:

(a) The person's address;
(b) The person's workplace or hours of work;
(c) The person's school or school hours;
(d) The person's contact information, including telephone number, electronic mail address or social media account information;
(e) The identity of known associates or relatives of the person;
(f) The date, time or location of the person's hearings, proceedings or appointments with the public body that are not matters of public record; or
(g) Information described in paragraphs (a) through (f) of this subsection with respect to known relatives or associates of the person.

[(2)] **(3)** Except as required by state or federal law, or as necessary to determine eligibility for a benefit a person is seeking, a public body may not inquire about or request information concerning a person's citizenship or immigration status.

[(3)(a)] **(4)(a)** If a public body collects information concerning a person's citizenship or immigration status, the public body [may] **shall** decline

3

EXHIBIT 2
Page 3 of 4

to disclose the information unless disclosure is required by:
  (A) State or federal law;
  (B) A court order; or
  (C) A warrant authorized by a court.
  (b) Nothing in this subsection:
  (A) Prevents a person from obtaining records about the person or the person's dependents from a public body; or
  (B) Authorizes a public body to withhold aggregated information that is not personally identifiable.
  [(4)] **(5)** A public body shall, within six months of August 15, 2017, and every year thereafter, review the public body's confidentiality policies to ensure that the public body treats information concerning a person's citizenship or immigration status, and information described in subsection [(1)] **(2)** of this section, in a manner consistent with this section and ORS 180.810.
  [(5) *Nothing in this section prohibits any public body from complying with a federal immigration authority as required by federal law.*]
  [(6) *As used in this section:*]
  [(a) *"Federal immigration authority" means the United States Department of Homeland Security, the United States Immigration and Customs Enforcement, the United States Citizenship and Immigration Services or a successor agency, any other federal immigration agency or official, or any other entity to which a federal immigration agency delegates or assigns the authority to detect, investigate or enforce violations of immigration law.*]
  [(b) *"Information concerning a person's citizenship or immigration status" means information about whether a person is a citizen of the United States or has lawful authority to be present in the United States, either through a visa, a green card or another official documentation. The term does not include information consisting of a person's address, location, contact information, relatives, associates or other information that could lead to the detection or apprehension of the person.*]
  [(c) *"Public body" has the meaning given that term in ORS 174.109.*]
  [(d) *"Social media" has the meaning given that term in ORS 659A.330.*]
  **(6) Any person may bring a civil action against a law enforcement agency or public body that violates subsection (2) or (3) of this section to enjoin the violation.**

  **SECTION 9.** ORS 181A.820 is amended to read:
  181A.820. **(1) As used in this section:**
  **(a) "Federal immigration authority" has the meaning given that term in ORS 180.805.**
  **(b) "Warrant of arrest" has the meaning given that term in ORS 131.005.**
  [(1)] **(2)** [*No*] **A** law enforcement agency [*of the State of Oregon or of any political subdivision of the state shall*] **may not** use agency moneys, equipment or personnel for the purpose of detecting or apprehending persons [*whose only violation of law is that they are persons of foreign citizenship present in the United States in violation of*] **for the purpose of enforcing** federal immigration laws.
  **(3) A law enforcement agency may not enter into a formal or informal agreement with a federal immigration authority relating to the detention of a person described in subsection (2) of this section.**
  [(2)] **(4)** Notwithstanding subsection [(1)] **(2)** of this section, a law enforcement agency may exchange information with [*United States Immigration and Customs Enforcement, United States Citizenship and Immigration Services and United States Customs and Border Protection*] **a federal immigration authority** in order to[:]
  [(a) *Verify the immigration status of a person if the person is arrested for any criminal offense; or*]
  [(b)] request criminal investigation information with reference to persons named in records of [*United States Immigration and Customs Enforcement, United States Citizenship and Immigration Services or United States Customs and Border Protection*] **the federal immigration authority**.
  [(3)] **(5)** Notwithstanding subsection [(1)] **(2)** of this section, a law enforcement agency may arrest any person who:
  (a) Is charged by the United States with a criminal violation of federal immigration laws under Title II of the Immigration and Nationality Act or 18 U.S.C. 1015, 1422 to 1429 or 1505; and
  (b) Is subject to arrest for the crime pursuant to a warrant of arrest issued by a federal magistrate.
  **(6) Any person may bring a civil action against a law enforcement agency that violates subsection (2) or (3) of this section to enjoin the violation.**
  [(4)] **(7)** For purposes of subsection [(1)] **(2) or (3)** of this section, the Bureau of Labor and Industries is not a law enforcement agency.
  [(5) *As used in this section, "warrant of arrest" has the meaning given that term in ORS 131.005.*]

  **SECTION 10. In addition to and not in lieu of any other appropriation, there is appropriated to the Department of Justice, for the biennium beginning July 1, 2021, out of the General Fund, the amount of $905,071, for the purposes of carrying out sections 3 and 4 of this 2021 Act.**

  **SECTION 11. This 2021 Act being necessary for the immediate preservation of the public peace, health and safety, an emergency is declared to exist, and this 2021 Act takes effect on its passage.**
Approved by the Governor July 19, 2021
Filed in the office of Secretary of State July 19, 2021
Effective date July 19, 2021

——————————