IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

UNITED STATES OF AMERICA,

        Petitioner,

     v.

MULTNOMAH COUNTY DEPARTMENT OF
COMMUNITY JUSTICE; DENISE PEÑA,
Director, Multnomah County Department of
Community Justice; CLACKAMAS COUNTY
SHERIFF ANGELA BRANDENBURG;
CLACKAMAS COUNTY SHERIFF'S
OFFICE PAROLE & PROBATION DIVISION;
SHERIFF NICHOLAS HUNTER, Marion
County Sheriff's Office Community Corrections
Division; MARION COUNTY SHERIFF'S
OFFICE, COMMUNITY CORRECTIONS
DIVISION; NATHAN GAOIRAN, Director,
Washington County Community Corrections
Probation & Parole; WASHINGTON
COUNTY COMMUNITY CORRECTIONS
PROBATION & PAROLE;

        Respondents.

_____

Case No. 6:25-cv-01784-MC

OPINION AND ORDER

MCSHANE, Judge:

     The United States petitions this Court to enforce nine administrative subpoenas served on

Respondent Counties Multnomah, Clackamas, Marion, and Washington by ICE's Homeland

Security Investigations. The Court has authority under 8 U.S.C. § 1225(d)(4)(B) to order

compliance with administrative subpoenas issued under § 1225(d)(4)(A).

Since (1) federal and state law do not conflict and (2) the subpoenas are enforceable, the United States' Petition, ECF No. 1, is **GRANTED**, and Marion County's Motion for Partial Summary Judgment, ECF No. 11, is **DENIED AS MOOT**.

## BACKGROUND

### I.    Statutory scheme

To assist in identifying and locating noncitizens subject to detention and removal under federal law, ICE can subpoena information from state and local officials. *See* 8 U.S.C. § 1225(d)(4)(A). If recipients neglect to respond to administrative subpoenas, § 1225(d)(4)(B) authorizes district courts to order compliance.

Oregon sanctuary law prohibits state and local officials from using state resources to support federal immigration enforcement. *See* ORS 181A.823; 181A.826. However, Oregon law permits state and county officials to answer judicially ordered administrative subpoenas. ORS 181A.823(1)(c)(A). Oregon law also expressly allows a state law enforcement agency to "exchange information with a federal immigration authority in order to request criminal investigation information . . . ." ORS 181A.820(4).

### II.    Abbreviated facts

On October 1, 2025, the U.S. Government filed this action to enforce ten[1] administrative subpoenas that ICE's Homeland Security Investigations issued to four Counties in Oregon: Multnomah, Clackamas, Marion, and Washington. Pet., ECF No. 1.

Homeland Security Investigations (HSI) is the primary investigative arm of ICE and DHS; the entity conducts complex criminal investigations in part to prevent exploitation of vulnerable

---

[1] On November 13, 2025, the United States filed a Notice of Withdrawal of Subpoena, ECF No. 21. The subpoena is moot because federal law enforcement authorities have located "Criminal Alien No. 10." *Id.* at 1.

populations. Rignel Decl. ¶ 2. HSI collaborates with ICE's Enforcement and Removal Operations (ERO) to investigate, identify, and locate "criminal [noncitizens] who are amenable to removal and/or criminal prosecution . . . ." *Id.* at ¶ 3. HSI "routinely" requests information from local and state law enforcement agencies to locate criminal noncitizens, assess their removability, and "prepare for targeted arrests." *Id.* at ¶ 4.

HSI has determined that the subject individuals in this case are vulnerable to detention pending their removal under several federal immigration statutes. Rignel Decl. ¶¶ 10–11. They are under investigation to assess both removability and possible detention. *Id.* at ¶¶ 5–9. After searching databases, compiling target profiles for each noncitizen, and conducting extensive surveillance, ICE has been unable to locate them. *Id.* at ¶¶ 12–14.

At the end of July, HSI issued ten total Immigration Enforcement Subpoenas to Respondents because the noncitizens were under post-prison supervision in their respective Counties.[2] Rignel Decl. ¶¶ 14, 20; Ex. 1 1. Each subpoena requests two categories of information. *Id.* at ¶ 16. The first will assist HSI in identifying and locating the subject individuals, all of whom received felony convictions.[3] *Id.* at ¶¶ 6–9, 19. The second category will assist officers in apprehending them.[4] *Id.* at ¶ 21.

Upon receiving the subpoenas from HSI, three of the four Respondent Counties—Multnomah, Clackamas, and Washington—declined to comply pursuant to Oregon sanctuary law.

---

[2] Multnomah County received four subpoenas; Clackamas County received two; Marion County received three; and Washington County received one. Rignel Decl. ¶¶ 6–9.

[3] Each subpoena requests documents sufficient to show: (1) home address(es) during the period of supervision; (2) phone number(s) during the period of supervision; (3) driver's license number and state; (4) name of employer(s) during the period of supervision; (5) employment address(es) during the period of supervision; (6) country of birth; (7) place of birth; (8) date of birth; (9) emergency contact number; and (10) bail or bond records to include the obligor name and address. Rignel Decl. ¶ 17.

[4] Each subpoena also requests documents sufficient to show the underlying criminal charge for each individual, including but not limited to: (1) unredacted police reports; (2) booking sheets; (3) booking photos; (4) probable cause statements; (5) jail disciplinary records; and (6) release agreements or release documents. Rignel Decl. ¶ 18. "HSI has been unable to obtain this information from any other source but Respondents." *Id.*

Rignel Decl. Ex. 3; *see also* Multnomah Resp., ECF No. 12; Clackamas Resp., ECF No. 14; Washington Resp., ECF No. 15. Marion County, instead of responding directly to the subpoenas, filed a separate action seeking declaratory relief. Marion County asks this Court to "resolve conflicts within and between federal and state laws" and clarify whether it is "required, prohibited, or allowed" to comply with the subpoenas. Compl. *Marion Cnty. v. Kotek et al.* (25-1464) ¶ 96, ECF No. 1.

## LEGAL STANDARD

"The scope of the judicial inquiry in an . . . agency subpoena enforcement proceeding is quite narrow." *E.E.O.C. v. Child's. Hosp. Med. Ctr. of N. Cal.*, 719 F.2d 1426, 1428 (9th Cir. 1983) (en banc), *overruled on other grounds as recognized in Prudential Ins. Co. v. Lai*, 42 F.3d 1299, 1303 (9th Cir. 1994). Courts only determine whether the subpoenas are enforceable under *United States v. Morton Salt Co.*, 338 U.S. 632 (1950), and its progeny.

An administrative subpoena is "sufficient if the inquiry is within the authority of the agency, the demand is not too indefinite, and the information sought is reasonably relevant." *Morton Salt Co.*, 338 U.S. at 652; *see also Child's. Hosp. Med. Ctr. of N. Cal.*, 719 F.2d at 1428 (the critical questions are whether the agency has authority to investigate; whether it has followed procedure; and whether the evidence is relevant and material). If the agency establishes the *Morton Salt Co.* factors, courts should enforce the administrative subpoena "unless the party being investigated proves the inquiry is unreasonable because it is overbroad or unduly burdensome." *N.L.R.B. v. N. Bay Plumbing, Inc.*, 102 F.3d 1005, 1007 (9th Cir. 1996) (citation modified).

## DISCUSSION

Because there is no conflict between federal and state law, the question is simply whether HSI's administrative subpoenas satisfy the legal standards established under *Morton Salt Co.* and its progeny. This Court finds that they do.

## I.    Both federal and state law recognize the agency's authority to seek a subpoena enforcement order from this Court

Oregon law contemplates the bifurcated process—codified in §§ 1225(d)(4)(A)–(B)—for federal agencies to issue and enforce administrative subpoenas. Oregon sanctuary law permits state law enforcement agencies to provide information about someone in their custody to a federal immigration authority if required by a judicial subpoena. ORS 181A.823(1)(c)(A). Another provision specifies that "a judicial subpoena does not include an administrative subpoena created and signed by a federal immigration authority." ORS 181A.823(2). This distinction evinces an understanding that federal courts can order state actors to comply with federal immigration subpoenas after they initially decline as required by Oregon law. Last, "far from limiting information sharing, ORS 181A.820 *explicitly* permits state law enforcement agencies to 'exchange information with a federal immigration authority . . . .'" *City & Cnty. of S.F. v. Garland*, 42 F.4th 1078, 1085–86 (9th Cir. 2022) (citing *Caruthers v. Kroger*, 222 P.3d 706, 707–08 (Or. 2009)). By filing a subpoena compliance action with this Court, HSI is simply proceeding to the next step after issuing an administrative subpoena as authorized in § 1225(d)(4)(B).[5]

---

[5] Marion County, in a motion for partial summary judgment, seeks an order requiring it to proffer HSI "the same responsive public records" that the County has released to multiple media outlets under Oregon public records law. Marion Mot. Summary J. 2, ECF No. 11. However, because the County can respond to the subpoenas following an order from this Court under Oregon *sanctuary* law, the motion for partial summary judgment is moot. Accordingly, the Court will not analyze Oregon public records law. The remaining Respondent Counties concede that they would produce responsive records pursuant to a judicial order as required by federal and state law. *See* Multnomah Resp. 2–3; Clackamas Resp. 2; Washington Resp. 2. Marion County envisages a false conflict between federal and state law, which ultimately allow compliance with the subpoenas.

## II.     HSI has established that its Immigration Enforcement Subpoenas meet well-established legal standards and are thus enforceable by this Court

HSI's subpoenas are enforceable under the law. First, the parties agree that immigration enforcement subpoenas are within ICE's (and by extension HSI's) authority. Congress may permit agencies to serve administrative subpoenas "for any purpose within Congress's constitutional power" without court authorization. *In re Nat'l Sec. Letter*, 33 F.4th 1058, 1063 (9th Cir. 2022). Section 1225(d)(4)(A) authorizes HSI to issue administrative subpoenas of its own accord, though the agency must invoke the power of this Court to enforce them. *Id.* The agency's subpoena power "encompasses the full range of subjects covered by [§ 1225's predecessor statute]." *United States v. Minker*, 350 U.S. 179, 185 (1956). Here, HSI's investigations into the noncitizens subject to removal fall within the statute's broad grant of subpoena power over "any matter which is material and relevant to" immigration enforcement. § 1225(d)(4)(A).

Second, the nine remaining subpoenas are sufficiently definite. They solicit discrete pieces of information and documents relating to nine individuals across four counties. *See* Rignel Decl. Ex. 1. Petitioner does not seek enforcement of past or future subpoenas, just the ones at issue here. Pet'r Reply 4, ECF No. 19.

Third, HSI's subpoenas are adequately relevant. Courts have constructed the term "relevant" capaciously. *McLane Co., Inc. v. E.E.O.C.*, 581 U.S. 72, 76 (2017). Administrative subpoenas are enforceable unless the information is "plainly incompetent or irrelevant to any lawful purpose of the agency." *E.E.O.C. v. Fed. Express Corp.*, 558 F.3d 842, 854 (9th Cir. 2009) (citation modified). HSI pursues records directly relevant to its investigations into the whereabouts and admissibility of the nine criminal noncitizens. The subpoenas request information to identify, contact, and locate them, as well as assess their "dangerousness." Rignel Decl. ¶¶ 17–25.

Because HSI has established that the subpoenas meet the *Morton Salt Co.* factors, this Court will enforce them unless the Counties show they are unreasonable. Respondents Multnomah and Washington Counties implicitly challenge the subpoenas on the bases of breadth and burden.[6] Petitioner represented at oral argument that it only requests information already within the "custody and control" of each Respondent, not information the Counties *could* obtain. This is patently reasonable.

Washington County also contests the subpoenas insofar as HSI already possesses the information. *See United States v. Powell*, 379 U.S. 48, 57–58 (1964) (the Commissioner must show that he does not already possess the information sought through an administrative subpoena). Washington County alleges that HSI already has the subject noncitizen's place of birth, country of birth, and biometric data sufficient to identify him. Washington Resp. 6. However, basic identifying information, such as date and place of birth, enables the agency to verify that the individual under Washington County's supervision is the same one HSI is investigating. Further, contact information, including addresses and phone numbers, can change. Though HSI may already possess some address information, updated addresses do not constitute information already within the agency's possession.

## CONCLUSION

Because federal and state law do not conflict and the subpoenas are legally enforceable, the United States' Petition, ECF No. 1, is **GRANTED**, and Marion County's Motion for Partial

---

[6] For instance, Multnomah County states that the Department of Community Justice and its Director, the recipients of the subpoenas, "are not the likely custodians of several categories of documents." Multnomah Resp. 3. Similarly, Washington County argues that one subpoena is overbroad because the County does not possess some of the records sought. Washington Resp. 7. To the extent Respondents object because they do not have specific pieces of information, they should submit declarations with their subpoena responses detailing what information they do control.

Summary Judgment, ECF No. 11, is **DENIED AS MOOT**.


      IT IS SO ORDERED.

      DATED this 24th day of November 2025.


                       \_\_s/Michael J. McShane_____
                              Michael McShane
                        United States District Judge